COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Felton, Judges Frank and Petty
Argued at Richmond, Virginia


PHILLIP LAWTON GRANT
                                                                OPINION BY
v.      Record No. 0877-08-4                    JUDGE WILLIAM G. PETTY
                                                                SEPTEMBER 1, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Bruce D. White, Judge

       Patrick M. Blanch, Assistant Public Defender (Office of the Public
       Defender, on briefs), for appellant.

       Benjamin H. Katz, Assistant Attorney General (Robert F.
       McDonnell, Attorney General; William C. Mims, Attorney General,
       on briefs), for appellee.


        Appellant, Phillip Lawton Grant, challenges his conviction for driving while intoxicated, in

violation of Code § 18.2-266.  Grant argues that his conviction should be reversed because the

certificate of the results of a chemical analysis of his breath indicating his blood alcohol level was

admitted into evidence in violation of his Sixth Amendment right to confront witnesses against

him.[1]  For the reasons explained below, we agree with Grant and reverse his conviction.

_____

[1] Grant's question presented on appeal is:

               Whether the trial court erred by denying appellant's motion to
               exclude from evidence, or alternatively to strike from evidence, the
               certificate of analysis because the Commonwealth failed to comply
               with appellant's timely "Notice of Defendant's Exercise of
               Confrontation Rights Pursuant to Va. Code 19.2-187.1."

While both parties argued that the statutes governing the admissibility of the breath test
certificate are Code §§ 19.2-187 and 19.2-187.1, the express statutory authority for the admission
of a breath test certificate is set out in Code § 18.2-268.9.  Code § 19.2-187 is limited to
certificates of analysis prepared by the Division of Consolidated Laboratory Services, the

I.  Background

Pursuant to Rule 5A:8(c), the parties presented an agreed statement of facts, in lieu of a transcript, of the trial court proceedings.  We draw this summary of the facts and incidents of trial from that statement.  In accord with our usual standard of review, we view the evidence and all reasonable inferences flowing from the evidence in a light most favorable to the Commonwealth as the party prevailing in the trial court.  Garcia v. Commonwealth, 40 Va. App. 184, 189, 578 S.E.2d 97, 99 (2003).

On June 30, 2007, Grant was involved in a minor traffic accident.  Approximately five minutes after the accident, Officer Wolfe arrived to investigate.  Officer Wolfe testified at trial that he noticed the odor of alcohol on Grant's breath as they interacted and that Grant's eyes were bloodshot.  Grant admitted to Officer Wolfe that he had consumed "a couple of beers" over an hour earlier.  Officer Wolfe then asked Grant to perform some field sobriety tests, which Grant agreed to do.  Grant successfully performed the "one-legged stand," although he did become confused when counting the number of seconds he stood on one leg, and performed the "walk-and-turn test," staggering once.  Grant also had some difficulty in reciting the alphabet.  At that point, Officer Wolfe asked Grant to take a preliminary breath test.  Grant refused to do so.

Based upon these circumstances, Officer Wolfe arrested Grant for driving while intoxicated.  The officer took Grant to the Fairfax County Adult Detention Center ("ADC").  After arriving at the ADC, the officer read Grant the implied consent statute, and Grant agreed to

Department of Forensic Science, and certain other enumerated laboratories.  Further, Code § 19.2-187.1 only provides for a right by the defendant to examine persons performing analysis pursuant to Code § 19.2-187.  It does not appear that the Fairfax County Adult Detention Center is one of the laboratories enumerated in Code § 19.2-187.  However, whether the parties and the trial court relied upon the correct statutory scheme addressing the admissibility of the breath test certificate is not before us in this appeal.  Therefore, we assume without deciding for the purposes of this opinion that Code § 19.2-187.1 is applicable to this case.

provide a sample of his breath in order to determine his blood alcohol concentration ("BAC") by blowing into the Intoxilyzer 5000 machine located at the ADC. According to the certificate of blood alcohol analysis ("certificate"), Grant's BAC at the time of the test was 0.11 grams per 210 liters of breath.

Over two months prior to his circuit court trial, Grant filed a "Notice of Defendant's Exercise of Confrontation Rights Pursuant to Va. Code § 19.2-187.1." The notice stated the following:

> The Defendant, Mr. Grant, pursuant to Virginia Code 19.2-187.1, the 6th and 14th Amendments to the United States Constitution, Article I § 8 of the Virginia Constitution, Davis v. Washington, 126 U.S. 2266 (2006), and Brooks v. Commonwealth, 49 Va. App. 155 (2006), hereby notifies the Commonwealth of Virginia that he does not stipulate to the admissibility of the contents of any properly filed certificates of analysis in this case. Mr. Grant further notifies the Commonwealth that he desires that the preparer of the certificate, including persons having personal knowledge of information attested to in the certificate, *be summoned by the Commonwealth to appear at trial* . . . at the cost of the Commonwealth to be cross-examined in this matter.

(Emphasis added).

The Commonwealth did not call the breath test operator as a witness at trial. Instead, it relied on the testimony of Officer Wolfe. He testified that he observed Grant for the required twenty-minute time period and that Grant "then blew into the Intoxilyzer 5000 machine. The machine determined that [Grant's] blood alcohol concentration . . . was 0.11." The Commonwealth then offered the certificate into evidence. Grant objected, arguing that the certificate should be excluded because the Commonwealth did not summon the person who prepared the certificate to be cross-examined at trial. The trial court overruled Grant's objection and ruled that the certificate was admissible. The trial court held that under Code § 19.2-187.1 the defense must subpoena the breath test operator, even though the statute provides that the cost of bringing the witness be paid by the Commonwealth. Thus, the trial court concluded that Grant

- 3 -

had not complied with Code § 19.2-187.1 because he had not subpoenaed the breath test operator to testify to the contents of the certificate.

The trial court found Grant guilty of driving while intoxicated, and this appeal followed. During the pendency of this appeal, the United States Supreme Court decided Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009), holding that certificates of analysis are testimonial statements, and, "[a]bsent a showing that the analysts were unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to 'be confronted with' the analysts at trial." Id. at 2532 (quoting Crawford v. Washington, 541 U.S. 36, 54 (2004)). After the Court released its opinion, we ordered the parties to submit supplemental briefs addressing the effect of the Melendez-Diaz decision on this case.

## II.  Analysis

### A.  Admissibility of the Certificate of Analysis[2]

The Commonwealth conceded in its supplemental brief that the contents of the attestation clause[3] contained in the certificate are testimonial in nature, based upon the United States

---

[2] Grant acknowledges that this Court has held that the *results* of a breath test as recorded in a certificate of analysis are not testimonial hearsay because the Intoxilyzer 5000 machine is not a witness. See Wimbish v. Commonwealth, 51 Va. App. 474, 482-84, 658 S.E.2d 715, 719-20 (2008). Instead, Grant argues that the contents of the attestation clause on the certificate of analysis are testimonial and subject to confrontation. He reasons that in the absence of the confrontation, the certificate of analysis itself is inadmissible.

[3] The attestation clause states, in pertinent part:

> I certify that the above is an accurate record of the test conducted;
> that the test was conducted with the type of equipment and in
> accordance with the methods approved by the department's
> specifications; that the equipment on which the breath test was
> conducted has been tested within the past six months and found to
> be accurate; that prior to administration of the test the accused was
> advised of his right to observe the process and see the blood
> alcohol reading on the equipment used to perform the breath test;
> and that I possess a valid license to conduct such test . . . .

Supreme Court's decision in <u>Melendez-Diaz</u>. The Commonwealth also conceded that Grant's notice pursuant to Code § 19.2-187.1 complied with the requirements of that statute as it was construed in <u>Magruder v. Commonwealth</u>, 275 Va. 283, 657 S.E.2d 113 (2008), <u>cert. granted sub nom.</u> <u>Briscoe v. Virginia</u>, 129 S. Ct. 2858 (2009). While we are not obliged to accept the Commonwealth's concession of legal error, <u>see</u> <u>Copeland v. Commonwealth</u>, 52 Va. App. 529, 531, 664 S.E.2d 528, 529 (2008), we agree with the Commonwealth in this case: the attestation clause is testimonial under the holding of <u>Melendez-Diaz</u>,[4] and Grant complied with the requirements of Code § 19.2-187.1.

<u>Melendez-Diaz</u> is the latest in the Supreme Court's recent line of cases regarding the right of a criminal defendant to confront the witnesses against him, as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution. 129 S. Ct. at 2531-32. In <u>Melendez-Diaz</u>, the Court held that the contents of the certificates of analysis at issue were testimonial in nature in accordance with its earlier decision in <u>Crawford</u>, 541 U.S. at 36. <u>Id.</u> at 2532. Thus, the analysts whose conclusions were memorialized in the certificates were "'witnesses' for the purposes of the Sixth Amendment. Absent a showing that the analysts were unavailable to testify at trial *and* that the [defendant] had a prior opportunity to cross-examine them, [the defendant] was entitled to 'be confronted with' the analysts at trial." <u>Id.</u> (quoting <u>Crawford</u>, 541 U.S. at 54) (emphasis in original).

The certificates of analysis at issue in <u>Melendez-Diaz</u> recited the results of a laboratory analysis of material that the laboratory concluded was cocaine. 129 S. Ct. at 2531. These certificates "were sworn to before a notary public by analysts at the State Laboratory Institute of

---

[4] We note that this case is very different from <u>Wimbish</u>, 51 Va. App. 474, 658 S.E.2d 715, where we rejected a <u>Crawford</u> challenge to the admission of, *inter alia*, the attestation clause on a certificate of analysis. In <u>Wimbish</u> the person who prepared the breath test certificate, including the attestation clause, testified and was subject to cross-examination by the defendant.

the Massachusetts Department of Public Health, as required under Massachusetts law." Id. (citation omitted). The Supreme Court concluded that "the documents at issue in this case fall within the 'core class of testimonial statements' . . . . The documents at issue here, while denominated by Massachusetts law 'certificates,' are quite plainly affidavits: 'declaration[s] of facts written down and sworn to by the declarant before an officer authorized to administer oaths.'" Id. at 2532 (quoting Crawford, 541 U.S. at 51; Black's Law Dictionary 62 (8th ed. 2004)). The Court went on to explain that the certificates existed to prove that "the substance found in the possession of Melendez-Diaz . . . was, as the prosecution claimed, cocaine—the precise testimony the analysts would be expected to provide if called at trial." Id. Thus, the Supreme Court reasoned, "[t]he 'certificates' are functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.'" Id. (quoting Davis v. Washington, 547 U.S. 813, 830 (2006)).

Virginia law does not require that certificates of blood alcohol analysis be sworn to before a notary public. The law does, however, require that the preparer of the certificate memorializing the results of a chemical analysis of a person's breath for the purposes of prosecution under Code § 18.2-266 sign an attestation clause confirming the accuracy of the test and that the test was conducted pursuant to the regulations of the Department of Forensic Science. Code § 18.2-268.9. Grant argues that this attestation clause is testimonial and that the trial court's failure to subject the preparer of the clause to cross-examination rendered the certificate inadmissible.

The first paragraph of Code § 18.2-268.9—the statute that governs the use of breath-test results as evidence in criminal trials—sets forth factual predicates that must be met before breath-test results are "capable of being considered valid as evidence in a criminal trial." The statute requires that:

- 6 -

> [The] chemical analysis of a person's breath shall be performed by an individual possessing a valid license to conduct such tests, with a type of equipment and in accordance with methods approved by the Department [of Forensic Science]. The Department shall test the accuracy of the breath-testing equipment at least once every six months.

The second paragraph of Code § 18.2-268.9 then goes on to require that the individual who prepares the certificate attest to his or her fulfillment of the prerequisites set forth in the first paragraph of the statute:

> Any individual conducting a breath test . . . shall issue a certificate which will indicate that the test was conducted in accordance with the Department's specifications, the equipment on which the breath test was conducted has been tested within the past six months and has been found to be accurate, the name of the accused, that prior to administration of the test the accused was advised of his right to observe the process and see the blood alcohol reading on the equipment used to perform the breath test, the date and time the sample was taken from the accused, the sample's alcohol content, and the name of the person who examined the sample. This certificate, *when attested by the individual conducting the breath test*, shall be admissible in any court in any criminal or civil proceeding as evidence of the facts therein stated and of the results of such analysis.

(Emphasis added). It is clear from the plain language of the statute that the General Assembly intended that the certificates be self-proving. The word "attest" means: "To bear witness; *testify*; to affirm to be true or genuine; to authenticate by signing as a witness." Black's Law Dictionary 147 (9th ed. 2009) (emphasis added). Moreover, Code § 18.2-268.9 provides that the evidence proving the statutory predicates governing both the reliability (first paragraph) and admissibility (second paragraph) of the facts contained in the certificate is provided in the attestation clause of the certificate, thus eliminating the need for the live, in-court testimony of a breath-test operator. Thus, the attestation clause on the certificate of analysis in this case was designed to be used exactly like the certificate at issue in Melendez-Diaz—to prove facts essential to the prosecution that would otherwise have to be proved by live, in-court testimony:

that the breath test was administered by a licensed operator in accordance with Code § 18.2-268.9.

However, the United States Supreme Court's recent decision in <u>Melendez-Diaz</u> invalidates this method of introducing evidence. Although the Court clarified that it did "not hold, and it is not the case, that anyone whose testimony may be relevant in establishing . . . the . . . accuracy of the testing device, must appear in person as part of the prosecution's case . . . [,] what testimony *is* introduced must (if the defendant objects) be introduced live." 129 S. Ct. at 2532 n.1 (emphasis in original). Thus, while there is no constitutional requirement that the factual predicates in Code § 18.2-268.9 be established prior to the admission of the results of the test, once the General Assembly conditions the validity and admissibility of the breath-test results on the proof of those facts, the Commonwealth must prove those facts through live, in-court testimony and not by affidavit. Accordingly, we hold that the attestation clause included in the certificate is testimonial in nature and its admission, over the objection of Grant, constitutes a violation of the Confrontation Clause.

We also agree with the Commonwealth that Grant complied with the requirements of Code § 19.2-187.1 and did not waive his right to confront the person who prepared the certificate. In <u>Magruder</u>, our Supreme Court clarified that a criminal defendant could "insur[e] the physical presence of the forensic analysts at trial" under Code § 19.2-187.1 "by issuing summons for their appearance at the Commonwealth's cost, *or asking the trial court or Commonwealth to do so*." <u>Magruder</u>, 275 Va. at 298, 657 S.E.2d at 120-21 (emphasis added). Here, Grant notified the Commonwealth "that he desire[d] that the preparer of the certificate . . . *be summoned by the Commonwealth to appear at trial* . . . at the cost of the Commonwealth to be cross-examined in this matter." (Emphasis added). Grant did what our Supreme Court

instructed in Magruder, and, accordingly preserved his right to confront the preparer of the certificate.

## B. Harmless Error

The Commonwealth argues, however, that even if the trial court erred in admitting the certificate, that error was harmless because there was sufficient evidence produced below to prove that Grant was guilty of driving while intoxicated. We disagree.

The standard for constitutional harmless error is well settled. "'When a federal constitutional error is involved, a reversal is required unless the reviewing court determines that the error is harmless beyond a reasonable doubt.'" Pitt v. Commonwealth, 260 Va. 692, 695, 539 S.E.2d 77, 78 (2000) (quoting Chapman v. California, 386 U.S. 18, 24 (1967)). In order to determine whether the error was harmless beyond a reasonable doubt, we must ask "'whether there is a reasonable possibility that the evidence complained of *might* have contributed to the conviction.'" Id. (quoting Fahy v. Connecticut, 375 U.S. 85, 86-87 (1963)) (emphasis in original). Finally, "the original common-law harmless error rule [places] the burden on the beneficiary of the error either to prove or disprove that there was no injury or to suffer a reversal of his erroneously obtained judgment." Chapman, 386 U.S. at 24; see also Lugar v. Commonwealth, 214 Va. 609, 630-31, 202 S.E.2d 894, 910 (1974) (Poff, J., concurring) ("[W]hen . . . on appeal, the Commonwealth argues [that evidence admitted in violation of a constitutional right was] 'harmless error,' the burden is on the Commonwealth to convince us beyond a reasonable doubt that the erroneous admission of evidence was harmless.").

According to the misdemeanor warrant in this case, Grant was charged with driving or operating a motor vehicle while having a blood alcohol concentration of 0.08 grams or more per 210 liters of breath, or while under the influence of alcohol. See Code § 18.2-266. Accordingly, the Commonwealth could prove the charges against Grant by (i) showing that he had the

requisite blood alcohol level, or (ii) by presenting other evidence, including evidence of his blood alcohol level, which would establish that he was driving under the influence of alcohol.[5] According to the statement of facts, the Commonwealth relied on all of the circumstances of the case in its closing argument, including the 0.11 blood alcohol concentration.

As discussed above, the attestation clause on the certificate showing a blood alcohol level of 0.11 grams per 210 liters of breath was erroneously admitted in this case. Accordingly, we must determine the importance of this error in light of the rest of the Commonwealth's case. In making this determination, we "must consider, among other factors, 'the importance of the tainted evidence in the prosecution's case, whether that evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and the overall strength of the prosecution's case.'" Zektaw v. Commonwealth, 278 Va. 127, 140, 677 S.E.2d 49, ___ (2009) (quoting Pitt, 260 Va. at 695, 539 S.E.2d at 78).

1. Officer Wolfe's Testimony as to the Contents of the Certificate

The Commonwealth contends the erroneous admission of the certificate constitutes harmless error. It reasons that Officer Wolfe's testimony that the result of the Intoxilyzer 5000 breath test, which he witnessed, but did not administer, was "0.11" is sufficient to support Grant's conviction.[6] However, this testimony did not establish that Grant's BAC was *0.08*

---

[5] "If there was at that time 0.08 percent or more by weight by volume of alcohol in the accused's blood or 0.08 grams or more per 210 liters of the accused's breath, it shall be presumed that the accused was under the influence of alcohol intoxicants at the time of the alleged offense." Code § 18.2-269(A)(3).

[6] In his supplemental brief, Grant argues that the statement of facts is "ambiguous on the point of whether Officer Wolfe testified about the results of the breath analysis. The Statement of Facts is inartfully drafted and unclear throughout the section regarding Officer Wolfe's testimony." The pertinent portion of the statement of facts is included in a section that begins, "When direct examination of Officer Wolfe continued, he testified as follows." Accordingly, we fail to see any ambiguity. However, we note that if Grant had concerns regarding the wording of the statement of facts, Rule 5A:8(d) provides a procedure for objecting to the content of the statement of facts that Grant failed to employ.

*grams or more per 210 liters of breath*, as required by Code § 18.2-266(i). The mere statement

that Grant's blood alcohol concentration was "0.11" was insufficient to establish that Grant's

blood alcohol content exceeded the per se prohibition of Code § 18.2-266(i) (0.08 grams or more

per 210 liters of breath) or to invoke the legal presumption of intoxication provided by Code

§ 18.2-269.[7] The only evidence that put the officer's testimony in context was the inadmissible

breath certificate. Accordingly, we are unable to say, beyond a reasonable doubt, that the facts

contained in the certificate played no role in the trial court's verdict.

In addition, Code § 18.2-266(i) requires the chemical test used to determine an accused's

blood alcohol content be "administered as provided in this article." Similarly, Code § 18.2-269

requires that the chemical analysis of the accused's breath must be prepared "in accordance with

the provisions of §§ 18.2-268.1 through 18.2-268.12." In Essex v. Commonwealth, 228 Va. 273,

279, 322 S.E.2d 216, 219 (1984), our Supreme Court held that a blood alcohol content test

ordered by an emergency room physician and performed in a hospital, was probative evidence of

intoxication in a prosecution under Code § 18.2-266(ii), because it was "'other relevant evidence

of the condition of the accused.'" 228 Va. at 286, 322 S.E.2d at 223 (quoting Code

---

[7] Code § 18.2-269(A) states, in pertinent part:

> In any prosecution for a violation of . . . clause (ii) . . . of
> § 18.2-266, . . . the amount of alcohol or drugs in the blood of the
> accused at the time of the alleged offense as indicated by a
> chemical analysis of the accused's blood or breath to determine the
> alcohol or drug content of his blood in accordance with the
> provisions of §§ 18.2-268.1 through 18.2-268.12 shall give rise to
> the following rebuttable presumptions:
>
>      \*     \*     \*     \*     \*     \*     \*
>
> (3) If there was at that time . . . 0.08 grams or more [by weight by
> volume of alcohol] per 210 liters of the accused's breath, it shall be
> presumed that the accused was under the influence of alcohol
> intoxicants at the time of the alleged offense[.]

- 11 -

§ 18.2-268(i)).[8]  However, the Court explained, while the evidence of the test results was "competent because supported by a proper foundation," the evidence "raised no legal presumption of intoxication" because the test was not conducted in accordance with the provisions of the applicable statute.  Id.  The Court based its holding on the plain language of the statute:  "Code § 18.2-269 expressly provides that the presumptions it creates arise *only* when a blood-alcohol test is conducted 'in accordance with the provisions of [§§ 18.2-268.1 through 18.2-268.12].'"  Id. (internal citations omitted) (emphasis added); see also Groggins v. Commonwealth, 34 Va. App. 19, 23, 537 S.E.2d 605, 607 (2005) ("Those presumptions apply only when a blood or breath test is administered pursuant to Code §§ 18.2-268.1 through -268.12.").

As discussed in part (A) of this opinion, the only evidence that the breath test in this case was administered either "as provided" by Title 18.2, Chapter Seven, Article Two of the Virginia Code or "in accordance with the provisions of §§ 18.2-268.1 through 18.2-268.12" is in the attestation clause on the certificate of analysis.  Because the use of the attestation clause in this

---

[8] At the time of the Essex decision, Code § 18.2-268(i) stated, in pertinent part:

> In any trial for a violation of § 18.2-266 of the Code . . . this section shall not otherwise limit the introduction of any relevant evidence bearing upon any question at issue before the court, and the court shall, regardless of the result of the blood or breath test or tests, if any, consider such other relevant evidence of the condition of the accused as shall be admissible in evidence.

The General Assembly repealed Code § 18.2-268, and replaced it with Code §§18.2-268.1 through 18.2-268.12 in 1992.  1992 Va. Acts 1475.  Code § 18.2-268.10(A) currently states, in pertinent part:

> In any trial for a violation of § 18.2-266 . . . the admission of the blood or breath test results shall not limit the introduction of any other relevant evidence bearing upon any question at issue before the court, and the court shall, regardless of the result of any blood or breath tests, consider other relevant admissible evidence of the condition of the accused.

case violated the Confrontation Clause, it cannot be used to prove that the breath test was administered in accordance with the relevant statutes. Thus, in order to convict Grant of a per se violation under Code § 18.2-266(i) or invoke the presumption of intoxication afforded by Code § 18.2-269(A)(3) the trial court must have relied on the facts recited in the attestation clause in order to conclude that the test was conducted in accordance with the relevant statutes. Therefore, we again cannot say with confidence that the admission of the certificate was harmless beyond a reasonable doubt.

## 2. Other Evidence of Intoxication

The Commonwealth also argues that Officer Wolfe's testimony regarding Grant's appearance and performance of field sobriety tests is sufficient to support Grant's conviction. We disagree.

In Bristol v. Commonwealth, 272 Va. 568, 636 S.E.2d 460 (2006), our Supreme Court held that a certificate memorializing the results of a blood test administered pursuant to Code § 18.2-268.2 was admitted into evidence in error because the appellant was not arrested within three hours of the offense, as required by Code § 18.2-268.2(A). 272 Va. at 575, 636 S.E.2d at 464. The Court rejected the Commonwealth's "contention that the erroneous admission of [the appellant's] blood test result was harmless error." Id. Because our Supreme Court believed that "[i]t [was] probable that the circuit court, as the trier of fact, attached great weight to the information contained in the certificate[,]" it declined to "reach the issue whether the other evidence of intoxication, apart from the certificate of analysis, is sufficient to sustain [the appellant's] convictions." Id.

Both this case and Bristol involved the determination of whether the erroneous admission of a certificate of analysis was harmless error in a driving while intoxicated case. In Bristol,

- 13 -

however, our Supreme Court applied the lesser standard of non-constitutional harmless error because the error there was statutory. See Lavinder v. Commonwealth, 12 Va. App. 1003, 1005-06, 407 S.E.2d 910, 911 (1991) (en banc) ("In Virginia, non-constitutional error is harmless 'when it *plainly appears* from the record and the evidence given at trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" (quoting Code § 8.01-678) (emphasis in original)). Here, however, we must apply the more stringent standard of *constitutional* harmless error. See id. at 1006, 407 S.E.2d at 911 ("Constitutional error, on the other hand, is harmless only when the reviewing court is 'able to declare a belief that it was harmless beyond a reasonable doubt.'" (quoting Chapman, 386 U.S. at 24)). This case, like Bristol, lacks overwhelming physical evidence of intoxication. See also Castillo v. Commonwealth, 21 Va. App. 482, 490, 465 S.E.2d 146, 150 (1995); cf. Luginbyhl v. Commonwealth, 48 Va. App. 58, 64-66, 628 S.E.2d 74, 77-79 (2006) (en banc) (assuming without deciding that the breath-test certificate was admitted in violation of the Confrontation Clause, but affirming conviction because the record included such overwhelming evidence of the appellant's guilt that the erroneous admission of the certificate was harmless beyond a reasonable doubt). Thus, we cannot conclude that the error here was harmless beyond a reasonable doubt.

### III. Conclusion

In sum, we hold that the certificate of breath-test analysis is testimonial and that the facts establishing the validity and admissibility of a breath-test result must be proved by live, in-court testimony in accordance with Melendez-Diaz.[9] We accordingly conclude that the trial court

---

[9] We recognize that an accused may waive his right of confrontation under the Sixth Amendment. See Melendez-Diaz, 129 S. Ct. at 2534 n.3 ("The right to confrontation may, of course, be waived, including by failure to object to the offending evidence; and States may adopt procedural rules governing the exercise of such objections."). Prior to Melendez-Diaz our Supreme Court construed Code § 19.2-187.1 to be such a procedural rule. See Magruder, 275

erred, reverse Grant's conviction, and remand for further proceedings if the Commonwealth be

so advised.

Reversed and remanded.

---

Va. at 305, 657 S.E.2d at 124.  Because Grant preserved his confrontation right under Code § 19.2-187.1, we express no opinion on whether Code § 19.2-187.1 continues to remain a constitutionally valid notice and demand statute in light of the United States Supreme Court's decision in Melendez-Diaz.  See Melendez-Diaz, 129 S. Ct. at 2539 ("[T]he [defendant's] ability to subpoena the analysts . . . is no substitute for the right of confrontation.").